**LAMBERT et al. v. PHILLIPS–LAFITTE CO., Inc. SAME v. LILLY. SAME v. CRAVER.**

Circuit Court of Appeals, Third Circuit. January 9, 1928.

Nos. 3678, 3689, 3690.

Patents ⟨⟩328—1,558,187, for knife sharpener, held invalid for lack of invention.

Lambert patent, No. 1,558,187, for knife sharpener, *held* invalid for lack of invention, in view of the prior art.

Appeal from the District Court of the United States for the Eastern District of Pennsylvania; Oliver B. Dickinson, Judge.

Suits in equity by David Lambert and the Ace Hardware Company, against the Phillips-Lafitte Company, Inc., against E. A. Lilly, trading as the Wayne Manufacturing Company, and against Oscar C. Craver, trading as the Jiffy Company. Decrees for defendants, and complainants appeal. Affirmed.

Joshua R. H. Potts and George B. Parkinson, both of Chicago, Ill., and Herman Seid, of Philadelphia, Pa., for appellants.

Kennard N. Ware and Howson & Howson, all of Philadelphia, Pa., for appellees.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

BUFFINGTON, Circuit Judge. In the court below the plaintiffs, the owners and sole licensees of patent for a knife sharpener, No. 1,558,187, applied for November 15, 1923, and granted to Lambert October 20, 1925, brought a bill charging infringement thereof. On hearing, the bill was dismissed and the patent held invalid. Thereupon the plaintiffs took this appeal. To determine the rights alleged to have accrued under this patent, we must first ascertain the prior state of the knife sharpener art as disclosed in patent No. 1,335,603 for such an article, applied for May 10, 1919, and granted to Roberts March 30, 1920. We note in the margin the pertinent parts of his specifications.[1]

Bearing in mind the fact that some knives, as, for example, butcher ones, are sharpened by the abrasion of both sides of the edge, and others, as for example, bread

---

[1] "The object of my invention is to provide a sharpener for knives, scissors, and the like, in which both sides of the cutting edge thereof may be sharpened, and also providing means whereby either side of the cutting edge may be sharpened at different angles. Another object of the invention is to provide a sharpener of this character, in which the sharpening cylinders are composed of a series of rotatably supported disks spaced apart, so that the disk of

knives, have but one side of the edge abraded, it will be seen from the above statements, numerically applied to the figure shown, that the patent disclosed a device for abrading both sides of the edges simultaneously at the central point of the housing, where both sets of interlapping disks revolved, and also a device for abrading one side only of the edge at the end housings 15 or 16, where but one set of disks revolved. It will, of course, be seen that there was no novelty in drawing a knife blade between the meeting point of two smooth, rigid, abrading surfaces. The improvement of Roberts over such well-known method is shown in the specification in the tilting of the sharpening cylinders or disks sideways, and using the disk edges as the sharpening abrasive agency. Thus the tilting of the disks is pointed out by the statement: "The *sharpening* cylinders are formed of a series of disks *12*, and, as shown, are comparatively thin, with *straight outer edges,* and provided with openings *14* to receive the bolts *10* and *11*. Any number of *cutting* disks may be used, and between each disk is a washer *14*, the diameter of which is considerably less than that of the *sharpening* disk. The washers, like the disks, are provided with openings through which the bolts pass, and there are sufficient disks and washers on each bolt to *nearly fill* the space be-

tween the sides of the housing *2,* so that there is a slight longitudinal movement of the *cutting* disks on the bolts." Now, as the cutting disks are "comparatively thin," and as sufficient space is provided to permit "a straight longitudinal movement of the cutting disks on the bolts," it is apparent that, when the knife is drawn across them transversely, the thin cutting disks will tilt and their "straight outer edges" be the patentee's functional agency for sharpening the side of the drawn knife. But the specification does not leave this to reasoning inference or palpable mechanical effect, but it expressly asserts such is the fact when it says: "*The sharp edges of disk* engage both sides of the knife and sharpen the same." For it may well be asked: How could the "comparatively thin" disks, hung on a bolt so as "to nearly fill the space" as to permit "a slight longitudinal movement of the *cutting* disks on the bolts," do anything else but tilt when the knife was drawn transversely across and thereby, as stated, "the sharp edges of the disk engage both sides of the knife and sharpen the same"?

The disclosure thus made by Roberts of utilizing the edges of tilted, revoluble, overlapping disks to sharpen knives drawn transversely across them, it follows that no alleged subsequent invention could be deemed the

Fig 1.

one cylinder overlaps the disk of the other, so that a greater sharpening surface is obtained."

Referring to the accompanying Figure 1 the application proceeds:

"The housing *2* is of a rectangular form, slightly smaller than the base *1,* and has its side walls provided with upwardly curved portions *6* and *7,* having openings *8* and *9,* in which are two bolts *10* and *11* which extend across the housing, and upon which are mounted the sharpening cylinders, as will now be described. The sharpening cylinders are formed of a series of disks *12,* and, as shown, are comparatively thin, with straight outer edges *13* and provided with openings *14* to receive the bolts *10* and *11.* Any number of cutting disks may be used, and between each disk is a washer *14,* the diameter of which is considerably less than that of the

sharpening disk. The washers, like the disks, are provided with openings through which the bolts pass, and there are sufficient disks and washers on each bolt to *nearly fill* the space between the sides of the housing *2,* so that there is a *slight longitudinal movement of the cutting disks on the bolts.* The bolts are so positioned that they pass between the sharpening disk carried by the other bolt, as clearly shown in Figs. 2 and 3 of the drawings. In the ordinary sharpening of a knife, and when it is desired to sharpen both sides, it is placed between the two sets of sharpening disks and drawn transversely of the housing, so that the *sharp edges* of the disk engage both sides of the knife and sharpen the same. The housing *2* has its ends *15* and *16* extending upwardly a considerable distance to form the guides for sharpening one side of the cutting edge of a knife, scissors, or other implements. The end, *15,* as shown is thickened or drawn inwardly, as indicated at *17,* above the sharpening cylinder, so that a knife or scissors blade placed against the inner face thereof, and drawn transversely of the housing will be sharpened. The end *16* is thickened, or drawn inwardly, as indicated at *18,* to a greater extent than the end *17* so that its inner face is closer to the top of the disk, and whereby the point of contact of the knife is at a less angle when held against the end *16* than when held against the end *15.* By this arrangement, applicant has produced a sharpener in which the proper bevel can be given to the cutting edges of different implements on either side, by drawing the tool across the same from different sides."

first invention, although Roberts may not have claimed all he disclosed. Milburn v. Davis, 270 U. S. 390, 46 S. Ct. 324, 70 L. Ed. 651. It is contended, however, that the specification did not disclose what we have stated above, and that we should not so construe it, because Roberts did not claim such alleged invention in toto. In other words, if he had made such invention, he would have claimed it, and, because he did not claim it, he did not make it, and therefore did not disclose it. This contention may be plausible on its face; but, when the proofs are studied, the reason why Roberts did not claim his disclosures in toto is plain. We shall not discuss those facts, but limit ourselves to saying that there had for many years been in public use by Roberts in his butcher shop, and for several years in a grocery store in Pittsburgh from whose owner he got it, a knife sharpener, which was produced in court, which was identical with Figure 1 of Roberts' patent, if we eliminate the two upright ends 15 and 16. This earlier sharpener, it will be noted, engaged both sides of the knife edge, and Roberts conceived the idea of adding the two upright ends and utilizing each set of cylinders with its adjoining upright to abrade but one side of the knife edge. He had to disclose the central double cylinder to show what his improvement at its two ends was; but he did not claim such device, because he was not the first inventor of it.

It follows, therefore, that both by the long prior public use of knife sharpeners with the thin tilting cylinders, which made their edges the functional abrasive, and by the disclosure thereof, in Roberts' specification in 1919, Lambert was not the first inventor thereof when he applied for his patent in 1923. So holding, the decree below should be and is now affirmed.