### In re GERNANDT.
### Patent Appeal No. 2319.

Court of Customs and Patent Appeals.
May 26, 1930.

M. K. Saunders, of Washington, D. C., and M. W. McConkey, of South Bend, Ind. (Semmes & Semmes, of Washington, D. C., of counsel), for appellant.

T. A. Hostetler, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GARRETT, Associate Judge.

This is an appeal from the decision of the Board of Appeals of the Patent Office affirming the decision of the Examiner rejecting all five of applicant's claims for "certain improvements in method of operating engines." The rejection was based upon the disclosures in prior art.

The elements involved in claim 2 are substantially the same as those embraced in claims 1 and 3, and claims 4 and 5 "cover a combination of steps of Claims 1 and 3."

The claimed invention, therefore, may be found in claims 1, 3, and 4, which read as follows:

"1. That method of operating an injection engine which comprises the steps of (a) separating out a charge of exhaust gas and completely vaporizing a charge of fuel therein, (b) compressing a charge of air, and (c) injecting the vaporized mixture of fuel and exhaust gas into the compressed air by compressing it more highly than the air, the fuel burning in the air to produce a power stroke."

"3. That method of starting an injection engine which comprises the steps of (a) compressing a relatively large charge of air ready for a power stroke, (b) compressing a relatively small charge of air and injecting thereinto a charge of fuel approximately corresponding to the large charge of air, the small charge of air being compressed highly enough to burn a portion of the fuel, the remainder of the fuel being completely vaporized in the resulting inert gases partly by the heat of compression and partly by the heat of such burning, and (c) injecting the vaporized mixture of fuel and inert burned gases into the large charge of air, the fuel burning in the air and producing the power stroke."

"4. The method of operating an injection engine which comprises the steps of (a) compressing a relatively large charge of air ready for a power stroke, (b) compressing a relatively small charge of air and injecting thereinto a charge of fuel approximately corresponding to the large charge of air, the small charge of air being compressed highly enough to burn a portion of the fuel, the remainder of the fuel being vaporized in the resulting inert gases partly by the heat of compression and partly by the heat of such burning, (c) injecting the vaporized mixture of fuel and inert burned gases into the large charge of air, the fuel burning in the air and producing the power stroke, and during each succeeding cycle; (d) trapping a small charge of exhaust gas produced on the preceding power stroke, (e) completely vaporizing in said exhaust gas a fuel charge, partly by the heat of the exhaust gas and partly by the heat of compression, (f) compressing a succeeding relatively large charge of air, and (g) injecting the vaporized mixture of fuel and exhaust gas into the compressed air to produce the next power stroke."

The patents cited as references are: Blakely, 1,245,312, November 12, 1917; Madler, 1,662,106, November 17, 1925; Grandjean, British, 128,802, July 15, 1920; Cameron, British, 7,563, March 30, 1909.

Claims 1 and 2 relate to the method of feeding or injecting the vaporized fuel from

an auxiliary chamber into the engine while the device is in operation. In claims 3, 4, and 5 the method relates primarily to the starting of the engine.

Appellant has stated the principal contention upon which he relies quite succinctly in his brief:

"Briefly stated, the method consists in mixing in an auxiliary chamber a charge of hot, inert gas (one that will not support combustion)—namely, the exhaust gas from the engine—with a charge of liquid fuel and compressing this mixture until the fuel is *completely* vaporized and at a temperature above the point of ignition and then injecting this vaporized mixture into the engine cylinder which contains at that time a charge of compressed air. The highly heated, totally vaporized fuel charge, when it is injected into the compressed air in the cylinder ignites and produces the power stroke.

"The step in this method which is of the utmost importance and which constitutes the very essence of the invention is that of the *complete vaporization* of the fuel prior to its injection into the engine cylinder."

It will be noted that emphasis is placed upon the words "completely" and "complete," as applied to the action of vaporization, and the word "completely" applied to vaporization is used in each of the five claims. It is the insistence of applicant that, because of the use of this word, his process cannot be read upon the patents cited against it, because none of them calls for *complete* vaporization, and it is argued that, in fact, there is not complete vaporization of the fuel in any one of them.

In the specifications of the Madler (United States) patent, we find the following:

"The underlying principle of my invention resides in the utilization of a small proportion of combustion gases in the main cylinder to prepare a charge of fuel in an auxiliary chamber for combustion and at the right moment inject the same into an air charge in the main cylinder to form the combustible mixture. The high temperature and pressure of the combustion gases so act upon the fuel as to vaporize the same and thus prepare it for efficient mixing and combustion with the air charge in the main cylinder."

At another place in the specifications it is said:

"Another modification of my invention consists in causing combustion gases in the main cylinder to carry a previously deposited fuel charge into a closed chamber, where the high temperature and pressure of the gases instantly vaporize the volatile portions of the fuel and at the proper time inject the vaporized fuel into the air charge in the main cylinder."

It thus appears that the specifications of Madler disclose the fact that the fuel is vaporized in an auxiliary chamber and by a process which appears to be similar to that of applicant. It is true that they do not say *completely* vaporized, but it does not seem to us that the word "completely" is essential to constitute a disclosure. Whether in actual practice the fuel is completely vaporized in the Madler method we are unable to determine. Appellant's brief and the able oral argument of his counsel lead us to believe that it probably is not, but it seems to us that as a legal proposition this is merely a matter of degree. Obviously a certain amount of vaporization must occur; the Madler specification does not say how much. It seems to us that its language is sufficient fully to cover complete vaporization, as well as lesser degrees thereof.

The question arose and was discussed during oral argument whether the language, being only in the specification, is such a disclosure as to constitute anticipation.

There was a very recent pronouncement upon this subject by the Supreme Court of the United States in the case of Minerals Separation North American Corporation v. Magma Copper Co., 280 U. S. 400, 50 S. Ct. 185, 186, 74 L. Ed. ——, 392 O. G. 491, decided February 24, 1930.

This was an infringement proceeding involving a process of concentrating ores. Discussing the alleged anticipating patent, the court, speaking through Mr. Justice Holmes, said:

"The question is not what is the precise scope of the *claims* in 835120, but what is disclosed *in the specification* and made known to the world. Alexander Milburn Co. v. Davis-Bournonville Co., 270 U. S. 390, 46 S. Ct. 324, 70 L. Ed. 651." (Italics ours.)

In the case of Cohn v. United States Corset Co., 93 U. S. 366, 23 L. Ed. 907, the Supreme Court held that a description in a provisional specification constituted a disclosure which defeated an action for infringement.

Application of the doctrine declared in the cited decisions seems to be decisive of the case at bar, and there does not appear to be any necessity for lengthening this opinion by entering upon a description of the operation or an analysis and application of the other patents cited as references.

The decision of the Board says:

"The U. S. Patent to Madler, in its statement of invention and in claims 1, 2 and 3, appears to cover the method stated in claims 1 and 2 of the application. Claims 3–5, inclusive, of the application are based upon the conditions at starting the engine when air instead of combustion gases is delivered to the auxiliary cylinder and produces a partial combustion of the fuel to raise the temperature and pressure of the charge preparatory to injecting it into the working cylinder. If this operation exists in applicant's engine, it must inherently be produced in that of the Madler patent."

We think there is no error in the decision of the Board, and the same is affirmed.

Affirmed.