**MAGNEX, Inc., a Colorado corporation,**
**Plaintiff,**

v.

**DURO MANUFACTURING COMPANY,**
**Inc., an Illinois corporation,**
**Defendant.**

**Civ. A. No. 56 C 1313.**

United States District Court
N. D. Illinois, E. D.

Dec. 30, 1957.

Wallace & Cannon, Chicago, Ill., for plaintiff.

B. Gordon Aller, Chicago, Ill., for defendant.

PERRY, District Judge.

This case came on to be heard before the Court on the pleadings and the evidence consisting of oral testimony, documentary proofs, and physical exhibits. The Court having carefully examined and considered the pleadings, exhibits, evidence, and briefs of counsel makes the following:

Findings of Fact

1. Plaintiff, Magnex, Inc., is a corporation organized and existing under the laws of the State of Colorado. At the time of the filing of the complaint herein, plaintiff had its place of business located in Denver, Colorado, but on February 15, 1957, during the pendency of the suit, the stock of plaintiff corporation was sold to Fabrico, Inc., of Green Lake, Wisconsin, and plaintiff's activities are now conducted from that point.

2. Defendant, Duro Manufacturing Company, Inc., is an Illinois corporation

and has its principal place of business at Coal City, Illinois.

3. The present suit was brought against Duro Manufacturing Company, Inc., charging infringement of U. S. patent No. 2,645,776 issued July 21, 1953 for a "Magnetic Pot Holder" of which plaintiff is the owner on an application of Hugh A. Kiler filed November 23, 1949.

4. Defendant, with its answer to the complaint, filed two counterclaims. The first of these counterclaims is a declaratory judgment counterclaim praying that this Court adjudicate, in addition to the Kiler patent No. 2,645,776 named in the complaint, U. S. patent No. 2,641,793 issued June 16, 1953 for a "Pot Holder", of which plaintiff is also the owner on an application of Carl C. Wilm filed July 22, 1952.

5. Plaintiff has charged infringement by defendant of both patents No. 2,645,776 and No. 2,641,793, as shown by Defendant's Exhibit A attached to the answer, and an actual controversial issue existed between the parties under the Patent Laws as to both patents No. 2,645,776 and No. 2,641,793.

6. The defendant also filed a second counterclaim charging unfair competition by plaintiff and loss of sales by the defendant resulting therefrom, but action on the second counterclaim was stayed by the Court pending disposition of the issues of patent validity and infringement as raised by the complaint, defendant's answer thereto, defendant's counterclaim for declaratory judgment, and plaintiff's reply thereto.

7. The case was tried by the Court as a straight patent case on the issues of validity and infringement of the two patents, Kiler No. 2,645,776 and Wilm No. 2,641,793.

8. Both patents in suit relate to the well-known articles of commerce known as pot holders, particularly pot holders which have a permanent magnet housed therein to cause the pot holders to cling to a metallic surface.

9. The art relating to pot holders is very old. Such devices were and still are ordinarily made by placing a suitable amount of cotton batting or other insulating material between a pair of cloth or cotton covers, the stitching the composite pad to produce a quilted effect, then binding the edges of the pad with cotton tape. The resultant pot holder may be of any desired size or shape but the square or rectangular shape appears to be most in favor. The Winteringer patent No. 647,549 issued April 17, 1900 and the prior art pad, Defendant's Exhibit C, admittedly available to the public for fifty years, are fair exemplifications of such prior art pot holders.

10. It was well known, too, long prior to the patents in suit, that many articles, including household articles, could be supported by or fastened to a metallic surface by means of permanent magnets. Winton patent No. 361,248 issued April 12, 1887, discloses magnet support for a large variety of household articles; Piken patent No. 2,212,326 issued August 20, 1940, discloses a magnet enclosed in the binding of a shower curtain to hold the curtain against the sides of a metallic bathtub or window frame, and the articles "Practical Magic with Magnets" published August, 1948 and "The Magic of Modern Magnets" published in 1946, neither of which were considered by the Patent Office, teach more than a hundred home and personal uses for permanent magnets including the use of such magnets to hold nonmetallic articles such as sheets of paper, drapes, pictures, and cigarette packages to metallic surfaces.

11. Plaintiff's witness, Carl C. Wilm, admitted a pot holder was just one of a "million other items" which employed a magnet to cause it to cling to a metallic surface.

12. The two patents in suit can hardly be distinguished from each other. Both patents disclose rectangular pot holders having three rounded corners and one square corner, both are quilted, and both have permanent magnets located near a corner portion. The only difference rests

in the location of the pocket in which the magnet is housed which, as the Examiner in the Patent Office said, was merely a matter of choice. The magnet will function in accordance with its inherent nature no matter where it is located in the pot holder.

13. The Kiler patent No. 2,645,776 was the first of the two patents in suit to be filed and the last to issue. Kiler's application was filed November 23, 1949—almost three years before the Wilm application reached the Patent Office.

14. Kiler discloses nothing more than the square quilted pot holder of the prior art as exemplified by the structure of the Winteringer patent No. 647,549 or Defendant's Exhibit C, with the addition of an admittedly prior art magnet housed in a pocket secured within the tape beyond the marginal edge of the pot holder, as is shown in Figure 1 of the patent. The magnet is used for supporting a common household article—a pot holder—on a magnetic surface, a practice well known in the art.

15. Kiler was not the first to incorporate a permanent magnet in a household article for the purpose of causing that article to cling to a metallic surface. Among others, the Piken patent No. 2,212,326 issued August 20, 1940 discloses the use of a magnet housed in a pocket made in a curtain to support the curtain on a metallic surface. The Ellis patent No. 2,389,298 issued November 20, 1945, and the Boggs patent No. 2,319,292 issued May 18, 1943 both disclose magnets enclosed in pockets located in the margin of garments to cause such margins to cling to each other. The article "Practical Magic with Magnets" dated August 1948, not considered by the Patent Office, teaches that magnets may be employed for many practical and personal uses such as, among others, supporting drapes and pictures on steel walls, holding a shower curtain against a bathtub, and nailing a package of cigarettes or a road map against the dash board of an automobile. There is no practical or patentable difference between locating a magnet between the covers of a pot holder to hold the pot holder on a metallic surface as disclosed by Kiler and locating a magnet between the covers of a cigarette package to hold the package on a metallic surface as disclosed by the article "Practical Magic with Magnets". The Kiler patent is completely anticipated by the prior art.

16. It is immaterial that no one single prior art patent or publication discloses a pot holder employing a magnet. It is sufficient that the prior art discloses, singularly or in partial combination, every feature claimed by the Kiler patent in suit. There is nothing about the disclosure of the Kiler patent which is not old and recognized as a part of the fund of common knowledge.

17. The Kiler patent is also invalid because it discloses merely an aggregation of two old elements, a pot holder and a magnet, long known, which in the aggregation perform no new or different function than that theretofore performed by them.

18. The Winteringer patent No. 647,549 issued April 17, 1900 and Defendant's Exhibit C, admittedly available to the public for fifty years, both disclose pot holders almost identical to the one disclosed by Kiler except that they do not contain a magnet. The magnets themselves, as disclosed by Kiler and as exemplified by Defendant's Exhibit E were also known prior to Kiler. In the Kiler patent, the functions of these two old elements are the same as in the prior art and no new unexpected or unobvious results are obtained by the association of these two old elements.

19. The Wilm patent No. 2,641,793 can hardly be distinguished from the Kiler patent. The evidence shows that the only difference between the respective structures resides in the location of the magnet, a mere matter of choice. The magnet will perform its well-known function regardless of its location in the pot holder and performs the same function in both the Kiler and the Wilm patents.

20. All of the claims of the Wilm patent in suit are invalid for the same reasons as those found against the Kiler pat-

ent. The claims are anticipated in the prior art and they constitute an aggregation of old elements which in the aggregate perform no new or different function and the result of which does not amount to invention.

21. The Wilm patent is invalid for the further reason that it is directly anticipated by Kiler's original application which has a filing date almost three years earlier than the filing date of the Wilm application.

22. Under the rule established by Alexander Milburn Co. v. Davis Bournonville Co., 270 U.S. 390, 46 S.Ct. 324, 70 L.Ed. 651, which rule is now codified as part of the Patent Statute (Section 102(e), Patent Codification Act of 1952, 35 U.S.C.A. § 102(e)), the earliest filed of two copending applications is prior art against the later filed even though the later filed may have been first to issue.

23. There is no patentable difference or distinction between the disclosures of the Kiler original application and the Wilm patent.

24. Plaintiff has introduced evidence of purported sales without showing what relationship such sales bear to the total sales of all pot holders sold during the reported period. In the absence of any such showing, no weight can be given to any alleged commercial success by reason of such sales. In any event, "commercial success without invention will not make patentability".

## Conclusions of Law

1. The Court has jurisdiction of the parties and of the cause of action alleged in the complaint and in defendant's first counterclaim.

2. The single claim of Kiler patent No. 2,645,776 is invalid as lacking patentable invention over the prior art patents and publications.

3. The single claim of the Kiler patent No. 2,645,776 is invalid also because it constitutes a mere aggregation of old elements the result of which does not amount to invention.

4. Claims 1, 2, and 3 of the Wilm patent No. 2,641,793 are invalid as lacking patentable invention over the prior art patents and publications.

5. Claims, 1, 2, and 3 of the Wilm patent No. 2,641,793 are invalid also because they constitute a mere aggregation of old elements, the result of which does not amount to invention.

6. Defendant is entitled to a judgment dismissing the complaint and in favor of defendant on its first counterclaim and to a judgment for costs.