51 CCPA

**Application of Elkan R. BLOUT and Howard G. Rogers.**

**Patent Appeal No. 7196.**

United States Court of Customs and Patent Appeals.
July 9, 1964.

transfer processes. The point of novelty is said to reside in the use of compounds having a silver halide developing moiety separated from a dye moiety by an organic radical which serves to both link and insulate the two. The significance of the insulating group is that it prevents conjugation or resonance between the dye function and the developing function so that the resulting color of the transferred image is determined essentially by the dye moiety. Claim 40 reads:

"40. A photographic product comprising a support carrying on one side thereof a plurality of layers, at least one of said layers containing a silver halide emulsion, and at least one of said layers containing a dye developer, said dye developer being a compound of the formula:

$$D \underline{\hspace{2cm}} D'$$

wherein D is the dye radical of a dye D—H containing a conjugated ring system capable of resonance and including at least one ring of 5 to 6 members, inclusive, selected from the group consisting of heterocyclic and aromatic rings, and also including chromophoric groups, whereby said dye D—H exhibits appreciable light absorption in the range of the visible spectrum, said dye D—H being selected from the group consisting of azo and anthraquinone dyes; D'—is a monovalent developer radical containing an aromatic nucleus so substituted by at least two members of the group consisting of hydroxy, amino and alkylamino groups as to be capable of developing exposed silver halide, the valence of said radical D'—being directly attached to said aromatic nucleus of D'—; said D'—being attached through a divalent organic insulating group including an intralinear acyclic atom of D to a ring of D selected from the group consisting of an aromatic ring and a heterocyclic ring, so that the conjugated bond system of said develop-

Brown & Mikulka, Donald L. Brown, Cambridge, Mass. (Stanley H. Mervis, Cambridge, Mass., of counsel), for appellants.

Clarence W. Moore, Washington, D. C. (J. F. Nakamura, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH and ALMOND, Judges.

WORLEY, Chief Judge.

Blout and Rogers appeal from the board's affirmance of the rejection of claims 40 through 52 of their patent application.[1]

The invention relates to the formation of color transfer images, primarily in Polaroid Land camera film, by diffusion

1. Serial No. 485,840, filed February 3, 1955.

er radical D′—is unconjugated with respect to any conjugated bond system of said dye radical D whereby the color characteristics of said dye developer are determined substantially entirely by the chromophoric-resonance system of said dye radical D."

The references are:

Corley    2,983,605    May 9, 1961 (filed January 31, 1955).

Rogers    2,983,606    May 9, 1961 (parent application filed March 9, 1954).

The rejections will be treated separately and the references will be discussed in connection with each ground of rejection.

### The rejection on Rogers

■ Rogers discloses, but does not claim, the invention of Blout and Rogers, appealed herein.

The ground of rejection on Rogers is anticipation under 35 U.S.C. § 102.

The brief on behalf of Blout and Rogers states:

"Appellants concede that if the Rogers sole patent is available as a reference, said patent is a bar to the instant claims, unless appellants' affidavits discussed below are found sufficient under Patent Office Rule 131 to remove that patent."

The board held that Rogers is a reference since it was filed earlier than the Blout and Rogers application. As to the affidavits under Rule 131, the board found them ineffective, regarding the first as conclusory and the second as failing to establish reduction to practice or even conception of "insulation of the developing function from the dye molecule."

Blout and Rogers contend that Rule 79 applies here and obviates the need for an affidavit under Rule 131. Rule 79 states:

79. *"Reservation clauses not permitted.* A reservation for a future application of subject matter disclosed but not claimed in a pending application will not be permitted in the pending application, but *an application disclosing unclaimed subject matter may contain a reference to a later filed application of the same applicant or owned by a common assignee disclosing and claiming that subject matter."* (Italics supplied.)

Blout and Rogers state in their brief:

"It is a recognized fact of modern research that worthwhile inventions spawn a family of related inventions. Research is commonly conducted by a 'team' of workers brought together to develop an idea. The members of such a team communicate their ideas and results to each other. Progress is accelerated, and improvement inventions frequently are made before the basic invention is embodied in a patent application. Quite commonly, such improvements then are disclosed in the patent application claiming the basic invention, the improvement being specifically claimed in a later filed application. To delay the filing of the basic application until the application claiming the improvement was ready for filing would usually have the effect of postponing the earliest date on which the disclosure became public. Such a delay is inconsistent with the public policy of encouraging early disclosure and early entry of the invention into the public domain."

We do not think it necessary to consider whether the two joint Blout and Rogers' affidavits comply with Rule 131.[2] The affidavits constitute sworn statements of the facts, clearly attributing the invention of dye developers to Rogers and the invention of insulated dye developers to Blout and Rogers. In re Middleton and Reynolds, 319 F.2d 552, 50 CCPA 1479, involved a rejection of a joint application of Middleton and Rey-

2. See In re Harry, 333 F.2d 920, 51 CCPA ——, with respect to the requirements of a Rule 131 affidavit.

nolds on a patent to Middleton. There the court said:

"* * * Appellants thus do not need to establish a date of invention against some other person or a reference of some other person in order to prevail. They need only establish that the Middleton patent is not a proper reference against them.[3]

"We think appellants have demonstrated by their affidavits that they, rather than Middleton alone, are the inventors of zinc titanate disclosed in the Middleton patent. * * *"

To apply the requirements of Rule 131 here would result in the anomalous situation of compelling Blout and Rogers to prove that they made their "improvement" before Rogers made the basic invention.[4] Since Blout and Rogers are claiming the improvement they made, as distinguished from the generic invention claimed by Rogers, and since Rogers is not "another" to Blout and Rogers, we conclude that the Rogers patent is not properly a reference against Blout and Rogers.

### The rejection on Corley

■ Corley discloses the dye developer *compounds* whose moieties are separated by an organic radical, which are used in Blout and Rogers' claimed photographic products and processes. Blout and Rogers argue that Corley is not an anticipation because it contains no "recognition or suggestion" of their use of the compounds or that the linking group functions as an insulator. Nonetheless, Corley discloses the compounds and their

preparation, he discloses and claims their use in a photographic product, and the insulating effect of the linking function would be obvious to one of ordinary skill in the art.[5] We therefore agree with the board that the appealed claims are "unpatentable over Corley."

Blout and Rogers' affidavits, while unsatisfactory to establish an earlier reduction to practice under Rule 131, nonetheless convince us that there is no need to overcome Corley as a prior art reference. The facts established by the affidavits show that Blout, Rogers and Corley worked together for the Polaroid Corp.; that their work was contiguous and sometimes overlapping; that Blout and Rogers are claiming what they invented; and that Corley claims what he invented. It seems apparent that the real issue here is not whether Blout and Rogers' application is patentable over Corley but whether the invention claimed is *patentably distinct* from the invention *claimed* by Corley. That the examiner recognized that issue is evident from the final rejection wherein he stated:

"Claims 23, 25–29 and 31–39 are *finally* rejected as being not patentably distinct from the allowed claims (all of them) of commonly assigned application Serial No. 485,342. No patentable distinction can be seen in the present claims over the allowed claims of said application. A mere difference in scope is not, per se, a patentable distinction."

A comparison of appealed claim 40 with claim 17 of Corley shows the closeness of what is now being claimed with

3. Middleton was not regarding as "another" with respect to Middleton and Reynolds. Hence 35 U.S.C. § 102(a) and (e) were not applicable.

4. Rule 131 affidavits are filed to establish a date earlier than the effective date of a reference and are not applicable to a situation in which the applicant clearly admits that the invention existed before he made his invention, which is described as an improvement thereon.

5. The Chemistry of Snythetic Dyes, Vol. 1, K. Venkataraman, 1952, Academic Press Inc., New York, page 358, under the heading "Insulating Groups:"

"When two or more chromophoric systems are present in a molecule, the effect is roughly additive if the systems are separated by two or more single bonds, i. e., by saturated groups such as — $CH_2$ — and — $CH_2$ $CH_2$ —, which break the conjugation and act as insulators between the two electronic oscillators. This important principle is illustrated in Fig. 10."

Corley's claims. Claim 17 of Corley reads:

"17. In a photographic product comprising a plurality of layers including a layer containing a silver halide emulsion and having a silver halide developer disposed in at least one layer, the feature of having said silver halide developer be a compound selected from the group consisting of:

$$Y_{(8-m)}-A-(\overset{R}{\underset{|}{N}}-Z-X)_m$$

and

$$Y_{(8-m)}-A-(\overset{R}{\underset{|}{N}}-X)_m$$

wherein A is an anthraquinone nucleus, X is an aryl radical selected from the group consisting of ortho- and para-dihydroxyphenyl and ortho- and para-dihydroxy-naphthyl radicals, R is an acyl group of an organic carboxylic acid, Z is a bivalent hydrocarbon radical containing at least one methylene group, $m$ is a positive integer less than 5, each Y is selected from the group consisting of hydrogen, amino, alkyl, aryl, nitro, halogen, alkylamino, arylamino, aryloxy, alkoxy, hydroxyl, sulfonamido, carboxamido, carboxy, sulfo,

$$-\overset{Q}{\underset{|}{N}}-Z-X \quad \text{and} \quad -\overset{Q}{\underset{|}{N}}-X$$

radicals, and Q is selected from the group consisting of hydrogen and alkyl radicals."

Hence the issue to be determined is one of double patenting. On appeal from the examiner's decision, the board stated:

"The Examiner also rejects the claims as 'lacking invention in light of the fact that appellants seek to claim a generic invention solely supported by the identical species disclosed and claimed by others.' This rejection appears to be cumulative to the rejection based on the art and we do not consider it necessary separately to pass on its merits. * * "

The board thus having specifically declined to rule on the issue of double patenting, we do not believe that we can appropriately decide that question. Therefore, we are obliged to reverse and remand this case for further proceedings in the Patent Office not inconsistent herewith.

Reversed and remanded.