**ILLINOIS TOOL WORKS, INC.,**
**Plaintiff-Appellant,**

**v.**

**SOLO CUP COMPANY, Inc., Defendant-Appellee.**

**No. 18960.**

United States Court of Appeals, Seventh Circuit.

Jan. 26, 1972.

Rehearing Denied March 24, 1972.

Certiorari Denied June 12, 1972. See 92 S.Ct. 2441.

---

James P. Hume, Granger Cook, Jr., Hume, Clement, Hume & Lee, Ltd., Chicago, Ill., Richard R. Trexler, Robert W. Beart, Michael Kovac, Chicago, Ill., of counsel, for plaintiff-appellant.

John F. Flannery, Francis A. Even, Fitch, Even, Tabin & Luedeka, Chicago, Ill., for defendant-appellee.

Before DUFFY and HASTINGS, Senior Circuit Judges, and SPRECHER, Circuit Judge.

DUFFY, Senior Circuit Judge.

In this suit, plaintiff, Illinois Tool Works, Inc. (ITW), charges defendant, Solo Cup (Solo), with infringement of ITW's Edwards' Patents Nos. 3,139,213 ('213) and 3,091,360 ('360). Both patents at issue relate to the design and manufacture of nestable, expandable thin-wall plastic containers of unitary construction, whose usual use is in applications which require dependable automatic dispensing of such containers, singly and in an upright position.

The '213 patent discloses and claims a thin-walled plastic container including a side wall, a bottom, a rim and a continuous Z-shaped stacking facility located in the side wall below the rim.

The '360 patent discloses and claims a similar thin-walled plastic container but with an interrupted stacking facility located in the side wall below the rim.

These two patents have been before us on previous occasions. The District Court found the '213 patent to be valid and infringed in Illinois Tool Works, Inc. v. Continental Can Company, 273 F.Supp. 94 (N.D.Ill.1967). We affirmed, 397 F.2d 517 (7 Cir., 1968).

The patents ('213 and '360) were before us in Illinois Tool Works, Inc. v. Sweetheart Plastics, Inc., 436 F.2d 1180 (7 Cir., 1971). The District Court, in the *Sweetheart* decision, determined that each of the patents was valid and infringed. (306 F.Supp. 364). We affirmed (436 F.2d 1180).

In 436 F.2d, at page 1182, we pointed out that the '213 patent had been challenged in a previous infringement suit in which, after full consideration of both anticipation and obviousness defenses raised therein, the District Court held the patent valid, and we affirmed in 397 F.2d 517 (7 Cir., 1968). We stated: "We again hold that the '213 patent is valid, unanticipated and nonobvious." (436 F.2d 1180, 1182). We further held " . . . The Edwards '360 patent was not anticipated by any of the inventions cited by defendant here or in the district court." (436 F.2d 1180).

With reference to the defense of obviousness, we stated: "Application of the foregoing method convinces us that the '360 patent is valid and nonobvious from the state of the prior art." (346 F.2d 1180, 1183).

We also said: "As is apparent from the descriptions of the asserted prior art which follow, none of these items sufficiently approximates the '360 invention to satisfy the narrow anticipation defense. Moreover, none of them, independently or in combination, renders the invention obvious." (436 F.2d 1180, 1183).

As to infringement, we said: "We agree with the district court that 'the accused . . . devices embody each of the elements specified in the patent.'" (436 F.2d 1180, 1187). We then affirmed the District Court in all respects.

In the instant case, on January 23, 1970, Solo filed a motion in the District Court seeking partial summary judgment as to Claims 1, 2 and 3 of the '360 patent, on the ground that these claims were invalid for obviousness. The District Court, 317 F.Supp. 1169, denied Solo's motion for summary judgment but decided that the '213 cups delivered to Automatic Canteen in April 1958 and resold for public use in April and May 1958 constituted prior art to be considered on the trial on the question of validity of the '360 patent.

The District Court adopted Solo's interpretation of 35 U.S.C. § 102(a) and held the sale to and the use of the '213 cups by Automatic Canteen rendered Edwards' own invention "known or used by others" within the meaning of Section 102(a), therefore available as prior art against the '360 cups.

The District Court then granted ITW's alternative motion to certify the "prior art" issue. ITW then petitioned this Court for leave to file this appeal and we granted that petition.

The important issue to be decided here is whether the District Court was in error in holding that one's own invention once disclosed to the public is "prior art" against the same inventor's later related invention on which an application was filed less than one year from such public disclosure.

We must also consider whether public knowledge, sale and use by others of the '213 plastic cups is "prior art" against the '360 patent even though the '360 patent was filed within one year of such public knowledge, sale and use and the inventive subject matter common to both the '213 and '360 inventions was developed by Edwards prior to the public knowledge and use of the '213 patent.

On November 29, 1957, ITW filed a patent application describing several species of thin-walled plastic nestable containers having a continuous Z-shaped stacking facility.

In December 1957, ITW submitted samples of plastic drinking cups to Automatic Canteen Company. In the same month, Automatic Canteen placed an order for one million of these cups. By April 1958, 50,000 of these cups had been delivered to Automatic Canteen and were, presumably, placed in vending ma-

chines used by the public in April and May 1958.

In June 1958, Edwards developed a thin-walled plastic cup having an interrupted side-wall Z-shaped stacking facility.

On October 29, 1958, ITW filed a continuation-in-part application comprising all of the subject matter of the original application plus drawings and claims directed to plastic containers having different forms of interrupted side-wall Z-shaped stacking facilities.

The original application was intentionally abandoned on November 10, 1958 after the filing of the continuation-in-part application. Thereafter, in response to the Patent Office's requirement for restriction of May 1, 1959, ITW filed a divisional application claiming the container species embodying the continuous Z-shaped stacking facility. The divisional application eventually matured into the '213 patent in suit.

The continuation-in-part application retained claims embodying the interrupted Z-shaped stacking facility and eventually matured into the '360 patent.

The District Court placed primary reliance on a court decision not cited by either party. This was a decision by the Court of Customs and Patent Appeals (C.C.P.A.). Application of Jaeger, 241 F.2d 723, 44 C.C.P.A. 767 (1957). We think that Court overlooked a fact which sharply distinguishes that case from the one at bar.

In the *Jaeger* case, the earlier prior art patent of one of the co-inventors had been issued more than two years prior to the filing of the application in question. Therefore, there was a statutory bar under 35 U.S.C. § 102(b). In that case, the subject application was not filed within one year of the publication or issue date of the earlier patent. The broad language used by the Court in *Jaeger* must be limited to a case where the prior art reference is a statutory bar under 35 U.S.C. § 102(b).

The District Court, in the case at bar, quoted from an unsubstantiated state-

ment by the Court of Customs and Patent Appeals in *Jaeger, supra,* in arriving at its opinion in the case at bar:

" . . . (t)he law makes no distinction between prior art of an applicant's own making and the prior art of others."

Upon closer examination, this statement appeared first in Dix-Seal Corporation v. New Haven Trap Rock Company, 236 F.Supp. 914 (D.C.Conn., 1964), where the *Jaeger* Court used this reasoning without including the determinative sentence preceding it. At page 920, the *Dix-Seal* Court said:

"Once the year in which to prepare and file his application has passed, the employment of a standard of patentability less stringent against the first inventor than against . . . others would seem to impair, if not defeat congressional policy. There should be no distinction between prior art of the inventor's own making and that of others."

Therefore, the reliance of the District Court on *Jaeger* as applicable to the case at bar seems misplaced.

In the appeal before our Court, ITW alleges the District Court erred in its ruling on the statutory interpretation of 35 U.S.C. § 102(a). The District Court reasoned in its memorandum opinion of June 24, 1970, that to give the statute the construction ITW desires would provide the inventor of two similar devices a "preferential exemption" from the prior art statutes as to the later invention. We believe the District Court erred in its interpretation of 35 U.S.C. § 102(a).

ITW has urged upon appeal that 35 U.S.C. § 102(a) pertains only to the originality or novelty of an application for a patent and the subject matter covered under said application; that a patent issue only to the first and original inventor of the subject matter. The District Court rejected ITW's argument that the language of 35 U.S.C. § 102(a) must be read to mean "invented by others" as

well as "known or used by others", as not persuasive.

The Supreme Court in Alexander Milburn Co. v. Davis-Bournonville Co., 270 U.S. 390, 46 S.Ct. 324, 70 L.Ed. 651 (1926) contemplated the Congressional intent of R.S. 4886 which preceded 35 U.S.C. § 102(a). In *Milburn, supra,* one Whitford's patent was invalidated on the premise that one Clifford's patent containing a full description of the Whitford claim earlier than any date of invention claimed by Whitford, was evidence that Whitford was not the first inventor. The statutory basis of that decision was that Whitford's invention was not patentable because "known or used by others in this country, before his invention." The "others" in the *Milburn, supra,* case was Clifford, an inventor unrelated and unknown to Whitford.

The pertinent part in the *Milburn* case with respect to the case before us is the evidence his invention was known to others before he claimed to have made his invention. "What he had invented lacked *novelty,* to put it one way, or he was not the *first* inventor, to put it another." Application of Land, 368 F.2d 866, 877, 54 C.C.P.A. 806 (1966) (emphasis supplied).

In Ex parte Lemieux, 1957 C.D. 47, 115 U.S.P.Q. 148, the Board of Patent Appeals cited the appeal of Ex parte Powell and Davis, 37 U.S.P.Q. 285 (Bd. App.1938) where it was held in a well drafted opinion that an applicant's own British specification, published a few weeks before the filing of his patent application, was not prior art and concluded that subsequent legislation had not altered that rule, that the reference (the applicant's own published specification) asserted to show prior art must disclose the work of someone other than the applicant. (Notice there existed no statutory bar under Section 102(b), because the published specification was within one year of the application).

The Court of Customs and Patent Appeals in Application of Facius, 408 F.2d 1396 (1969) discussed how a reference may be "overcome" if the reference is not a statutory bar under 35 U.S.C. § 102(b). The Court, in *Facius, supra,* discussed two cases where references for anticipation rejections under 35 U.S.C. § 102(e) were deemed to have been "overcome", In re Blout, 333 F.2d 928, 52 C. C.P.A. 751 (1964) and In re Mathews, 408 F.2d 1393 (Cust. & Pat.App., 1969). The Court, in *Facius, supra,* reasoning how a reference available as prior art can be and was overcome in the two related cases, said at pages 1405–1406:

"Moreover, appellants further showed that they themselves had made the inventions [10] upon which the relevant disclosures in the patents had been based. This is a significant fact, If all the appellants had done was to bring the invention of another to the attention of the patentees, then that disclosure in the patent would have been the invention of another and still available as prior art. . . .

10. . . . Appellants having shown that they originated the inventions disclosed in the reference, lack of novelty and/or obviousness was immaterial to overcome the references."

In the case before us, ITW urges that the '213 cups sold to Automatic Canteen should not be considered prior art against the '360 patent because the subject matter of that sale was Edwards' own invention. The '213 cups were not the invention of another available as a reference under 35 U.S.C. § 102(a). It has been established that Edwards did apply and did receive a patent for the '213 cups. Edwards was the first inventor of the subject matter, a fact not in dispute. Therefore, we feel Solo's contention that the sale of the '213 cups constituted prior art because the "invention was known or used by others in this country . . ., before the invention thereof by the applicant for patent" under 35 U.S.C. § 102(a), is without merit.

Pertinent is the Court's statement in *Facius, supra,* at page 1406:

"But certainly *one's own invention,* whatever the form of disclosure to the

public, may not be prior art against oneself, *absent a statutory bar.*"

Obviously, the statutory bar referred to above pertains to the one-year period during which Congress has allowed an inventor to perfect, develop and apply for a patent pursuant to 35 U.S.C. § 102(b).

We are of the opinion that Section 102(a) dictates that Edwards had to be the first and original inventor of the '360 invention and absent a reference patent or prior invention by another, the requirements of Section 102(a) have been satisfied. As indicated in *Application of Land, supra,* and in the opinion of the Court of Patent Appeals, *Ex parte Powell and Davis, supra,* we are convinced that ITW has overcome any possible reference under Section 102(a) by showing Edwards was the first and original inventor of the subject matter of the '360 patent. Congress indicated by its language in Section 102(a) that the subject matter must have been "invented by others" as well as "known or used by others."

Article I, Section 8, Clause 8, of the Constitution provides that Congress has been granted the power " . . . To promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries." Congress, in the Patent Act of 1952, has interpreted the "limited Time(s)" to extend for a period of one year during which an inventor is permitted to prepare and submit an application for a patentable advance in technology and still be protected by the patent laws.

Section 102(b) concerns the action an inventor must follow once he has developed a novel and original invention (these qualifications are considered in Section 102(a) rendering it imperative that the inventor claiming under the Act be the *first* inventor of the claimed subject matter, as well as the subject matter being in itself a novel and original advance, Application of Land, 368 F.2d 866 (1966)). Section 102(b) imposes the time limitation of one year on the inventor which limitation is recognized by Congress as implied in the Constitution that an inventor act with deliberate speed in filing his patent application, or his rights to a legal monopoly will be statutorily barred. *Dix-Seal, supra.*

Undoubtedly, a majority of inventions are made in stages. Modifications and improvements of the original idea are common. If the ruling of the District Court is allowed to stand, it would be natural for an inventor to withhold any disclosure to the public until the innovative development is completed. We feel any such delays in disclosure of prospective inventions would seem contrary to the purpose of the patent laws to have new inventions promptly before the public.

The balancing process between the encouragement of technological advancement by the granting of legal monopolies and permitting a one-year grace period for application, and the interest of the public in having new advances readily accessible, has been considered by Congress in Section 102(b). The policy to expedite free public use and public disclosure by inventors was the overriding consideration of Congress in passing Section 102(b), which expressly bars an inventor who does not file an application within one year after his invention has been in public use.

Once in public use, that invention becomes prior art and as to all later discoveries in that field, *anyone else* must show some "patentable" change to obtain the legal monopoly. Once the year in which to prepare and file this application has passed, the employment of a standard of patentability less stringent against the first inventor than against these others would seem to impair, if not defeat, congressional policy. *Dix-Seal, supra.* However, in the instant case, the one year period had clearly not passed.

This Court has long recognized a patentee's right to carry the date of his in-

vention behind the date of an apparent reference or patent and thus eliminate that reference or patent from consideration. Moline Plow Co. v. Rock Island Plow Co., 212 F. 727, 731 (7 Cir. 1914); Pleatmaster, Inc. v. J. L. Golding Mfg. Co., 240 F.2d 894, 898 (7 Cir., 1957).

Of course, if the "reference" has an effective date more than one year before the application date of the claims under consideration, the statutory bar of 35 U.S.C. § 102(b) prevents the applicant even though he be the original inventor, from obtaining the patent.

In the case before us, the evidence is uncontroverted with respect to the time of filing the applications and the public use of the '213 cup. On November 29, 1957, Edwards filed a patent application which eventually matured into the '213 patent. In April 1958, the knowledge and use of the continuous ring cups by the general public was realized through the sale of cups to Automatic Canteen. On October 29, 1958, eleven months after the initial application, Edwards filed a continuation-in-part application comprising all the claims of the original application plus the additional description and claims which matured into the '360 patent.

We think the District Court was in error in concluding that the public knowledge and use and offer for sale and the sale of the '213 cups in December 1957 and April-May 1958 constitutes "prior art" against the '360 patent.

We hold that the District Court erroneously interpreted "knowledge of use by others" in 35 U.S.C. § 102(a) to mean the knowledge and use of Edwards' own invention.

We also hold that the District Court's reliance on In re Jaeger was misplaced as that case involves a statutory bar under 35 U.S.C. § 102(b) which does not exist in the instant case.

Furthermore, there is a well established line of decisions in the Court of Customs and Patent Appeals to the effect one's own invention, whatever the form of the disclosure to the public may be, cannot be a prior art against oneself, absent a statutory bar.

The order of the District Court here in issue is reversed and the cause is remanded to the District Court for further proceedings not inconsistent with our decision herein.

Reversed and remanded.